

**IT IS ORDERED as set forth below:**

**Date: May 31, 2019**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NO. **18-52501-PMB** |
| **WASTETECH, LLC, f/k/a NTC WASTE GROUP,** | : | CHAPTER 7 |
| Debtor. | : | |
| **CATHY L. SCARVER, Chapter 7 Trustee,** | : | |
| Plaintiff, | : | ADVERSARY PROCEEDING |
| v. | : | NO. **18-5070** |
| **SILVERLINE SERVICES INC.,** | : | |
| Defendant. | : | |

## ORDER GRANTING MOTION OF
## CHAPTER 7 TRUSTEE FOR SUMMARY JUDGMENT

The above-referenced matter (the "Adversary Proceeding") comes before the Court on the

*Motion for Summary Judgment against Defendant* (Docket No. 27)(the "Motion") filed by Plaintiff,

the Chapter 7 Trustee (the "Trustee"), for the estate (the "Estate") of the above-named Debtor (the "Debtor"), against Defendant Silverline Services Inc. (the "Defendant") on December 28, 2018.  In support of the Motion, the Trustee also filed a *Brief in Support* (Docket No. 32) and *Statement of Material Facts Not in Dispute* (Docket No. 33)("Statement of Material Facts"), as well as a *Notice of Filing of Plaintiff's First Request for Admissions to Defendant*, *Notice of Filing of Defendant's Response to Plaintiff's First Request for Admissions*, *Notice of Filing of Discovery*, and an *Affidavit of Cathy L. Scarver* (the "Affidavit")(Docket Nos. 28, 29, 30, and 31, respectively).  In response, the Defendant filed a *Memorandum of Law in Opposition to the Motion* ("Defendant's Brief in Opposition") and *Defendant's Response to Statement of Material Facts in Opposition to Summary Judgment* ("Defendant's Response to Statement of Material Facts") on January 18, 2019 (Docket Nos. 34 and 35, respectively).  The Trustee thereafter filed *Trustee's Reply to Defendant's Response* on February 1, 2019 (Docket No. 36).

## FACTS

The following material facts of this case are undisputed.[1]  The Debtor is a limited liability company organized under the laws of the State of Georgia in July 2016.  The Debtor officially changed its name from NTC Waste Group, LLC to Wastetech, LLC, and filed a Certificate of Amendment with the Secretary of State of Georgia effecting that change, on July 7, 2017.  *See* Statement of Material Facts, ¶ 5; Exhibit "B," attached to Affidavit.[2]

---

[1] *See* Statement of Material Facts and Defendant's Response to Statement of Material Facts, at Docket Nos. 33 and 35, respectively.

[2] Defendant does not dispute that the Debtor filed its name change with the Secretary of State's office, but states it lacks knowledge regarding whether the Debtor changed its name in its Articles of Amendment of Articles of Organization.  *See* Defendant's Response to Statement of Material Facts, ¶ 5.  However, the Defendant did not controvert the copy of the filed Certificate of Amendment to which the Articles of Amendment are attached, that are collectively attached as Exhibit "B" to the Affidavit as referenced in paragraph 7, and further described in the Statement of Material Facts in paragraph 5.  Pursuant to Federal Rule of Civil Procedure 56(e)(2), applicable herein through Federal Rule of Bankruptcy Procedure 7056, the Court considers this fact undisputed in light of the foregoing.

2

During 2017, the Debtor executed six (6) Purchase and Sale of Future Receivables Agreements in favor of the Defendant, dated as of June 13, 2017; July 6, 2017; July 19, 2017; August 3, 2017; August 18, 2017; and September 26, 2017, respectively (the "Receivables Agreements").[3] Each of the Receivables Agreements contains the following language in paragraph 15:

> Grant of Security Interest/UCC-1 Financing Statements. To secure the performance of [Debtor's] obligations hereunder, [Debtor] grants to [Defendant] a continuing security interest in all of [Debtor's] Future Receivables, inventory, equipment, goods, accounts, investment property, and other personal property and assets, and [Debtor] authorizes [Defendant] to file one or more UCC-1 Financing Statements prior to each sale of Future Receivables for purposes of providing public notice of the purchase by [Defendant] from [Debtor] of the Receivables Purchased Amount of Future Receivables and [Defendant's] security interest in all of [Debtor's] Future Receivables, inventory, equipment, goods, accounts, investment property, and other personal property and assets. The UCC-1 Financing Statements will state that the sale of the Future Receivables is an outright sale and not an assignment for security.

Statement of Material Facts, ¶ 8; *see also* Exhibit "A," attached to Notice of Filing of Plaintiff's First Request for Admissions (Docket No. 28). The Defendant filed and recorded a UCC-1 financing statement (the "Financing Statement") with the Clerk of the Superior Court of Coweta County, Georgia, on November 14, 2017. (Statement of Material Facts ¶ 9; copy also attached to

---

[3] The Receivables Agreements contain language conveying to the Defendant for purposes of securing the performance of the Debtor's obligations to Defendant a continuing security interest in the future receivables of the Debtor, inventory, equipment, goods, accounts, investment property, and other personal property and assets. *See* Receivables Agreement dated June 13, 2017 attached to Notice of Filing of Discovery, at pp. 27-29 (Docket No. 30). True and accurate copies of all the Receivables Agreements are attached as Exhibit "A" to the Notice of Filing of Plaintiff's First Request for Admissions to Defendant. *See* Docket No. 28; *see also* Defendant's Response at Docket No. 29 (acknowledging same).

Notice of Filing of Discovery, p. 37). The debtor identified on the Financing Statement is NTC Waste Group, LLC. The collateral description on the Financing Statement is as follows:

> Certain future receivables sold by said business seller and purchased by Crown Funding Group, Inc., as buyer, pursuant to that certain purchase and sale of future receivables agreement between seller and purchaser dated 8/7/2017 (the "agreement").[4]

Statement of Material Facts, ¶ 10. The Defendant did not file any financing statements in Georgia that listed the name "Wastetech LLC" or "Wastetech" as the debtor. Statement of Material Facts, ¶ 11. As discussed below, the Trustee alleges that a search of the Georgia Superior Court Clerks' Cooperative Authority's Lien records ("GSCCCA") for the entity "Wastetech" or "Wastetech LLC" would not have disclosed the existence of the Financing Statement. Statement of Material Facts, ¶ 12.[5]

The Debtor filed this case under Chapter 7 of title 11, United States Code (the "Bankruptcy Code") on February 13, 2018 (the "Filing Date"). The Trustee was designated the interim trustee in this case and became the permanent trustee upon the conclusion of the meeting of creditors on March 13, 2018, pursuant to Section 702(d) of the Bankruptcy Code. The Trustee initiated the Adversary Proceeding on April 9, 2018 and filed the *Amended and Restated Complaint to Determine Validity, Priority, or Extent of Liens and for Avoidance* (Docket No. 9)(the "Complaint")

---

[4] The Defendant does not dispute that it claims a perfected security interest in Debtor's Accounts Receivable based on the Financing Statement, but does assert that it relies on other evidence in support of its claim such as the allegation that the Debtor continued to execute receivables agreements under its former name. *See* Defendant's Response to Statement of Material Facts, ¶ 9 (Docket No. 35). The Court concludes that this contention is not relevant to its analysis of the Financing Statement. *See* p. 13, *infra*.

[5] The Trustee testified in her Affidavit at paragraph 10 (Docket No. 31) that "in the first month of this Bankruptcy Case, [her] counsel searched the records of the Georgia Superior Court Clerks' Cooperative [Authority] for filed financing statement naming 'Wastetech' or 'Wastetech, LLC' as the debtor. [Her] counsel found no financing statement naming 'Wastetech' or 'Wastetech, LLC' as debtor on a financing statement filed by [the Defendant] as the secured party." The Defendant asserted in the Defendant's Brief in Opposition that the Trustee had not met her burden in showing how a search of the GSCCCA's Lien records for the entity "Wastetech" or "Wastetech LLC" would not have disclosed the existence of the Financing Statement. As discussed below, the record has now been supplemented regarding this allegation.

4

against the Defendant on May 17, 2018.  On July 2, 2018, the Defendant filed its *Answer and Affirmative Defenses* (Docket No. 15).  In this Adversary Proceeding, the Trustee seeks entry of judgment adjudicating that:

1) any alleged liens held by the Defendant under the Receivables Agreements against property of the Estate are subordinate to the interest of the Trustee as a subsequent hypothetical judgment creditor under Section 544 of the Bankruptcy Code;

2) pursuant to Section 544 of the Bankruptcy Code, the Trustee is entitled to avoid the transfers by the Debtor to the Defendant of any security interest (the "Transfers") in the Debtor's accounts receivable (the "Accounts Receivable") based on the Receivables Agreements and the recordation of the Financing Statement")(attached as Exhibit 3 to the Complaint) such that the Defendant is an unsecured creditor; and

3) the Trustee is entitled to recover the above avoided Transfers under Section 550 and preserve the same for the benefit of the Estate under Section 551 of the Bankruptcy Code.

The Defendant denies that the Trustee is entitled to this relief.

## ISSUE FOR DECISION

The determinative issue is whether as of the Filing Date the Defendant's security interest in the Debtor's Accounts Receivable was unperfected under Georgia law, either because (i) the Debtor's name listed in the Financing Statement is inconsistent with its name on the public record as of the date of recording due to a name change prior to the filing of the Financing Statement, or because (ii) the description of the collateral in the Financing Statement does not adequately identify the collateral because the agreement date referenced in the collateral description is inaccurate and the secured creditor name contained in the collateral description is also inaccurate (making it impossible to locate the agreement describing the collateral).  Regarding the former, a key question

5

is whether the Financing Statement is seriously misleading as defined under Georgia law in O.C.G.A. § 11-9-506(b) because it fails to provide the Debtor's correct name at the time of its filing, and more particularly whether the Financing Statement qualifies for the safe harbor provision in Section 11-9-506(c).

Upon consideration of all the pleadings and briefs filed in this matter, as well as the supplemental filings of record, and based on the undisputed facts, for the reasons discussed below this Court holds that the perfection of the Defendant's security interest in the Debtor's Accounts Receivable is ineffective under O.C.G.A. §§ 11-9-503(a)(1) and (3), 11-9-504, and 11-9-506(a)-(b) and the Transfers are avoidable and recoverable under 11 U.S.C. §§ 544, 550, and 551. Therefore, the Trustee's Motion will be granted.

## **LEGAL ANALYSIS**[6]

I. <u>Standard of Review</u>

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56, which as noted above is made applicable herein by Federal Rule of Bankruptcy Procedure 7056, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[7] In deciding a motion for summary judgment, the court "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

---

[6] This court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157.

[7] In determining the materiality of facts, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The initial burden of proving the absence of dispute as to any material fact rests with the moving party. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In meeting this initial burden, the moving party must identify "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)(internal quotations omitted). Once the party moving for summary judgment has identified those materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits or personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. *See* Fed.R.Civ.P. 56(c) & (e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Fleet Finance Inc.*, 4 F.3d 946, 948-49 (11th Cir. 1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). Further, all reasonable doubts should be resolved in favor of the non-moving party, and "[i]f reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994)(citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

II. <u>Trustee's Avoidance Powers and the Perfection of the Defendant's Security Interest</u>

Pursuant to 11 U.S.C. § 544(a), the Trustee is provided with the rights of a hypothetical judicial lien creditor and has authority to seek the avoidance of unperfected security interests. *See In re Pierce*, 581 B.R. 912, 916 (Bankr. S.D. Ga. 2018)(internal citations omitted).

*Wrong Name on UCC-1*

Under the Official Code of Georgia Annotated, for a security interest in accounts receivable to be perfected, a financing statement must be filed. O.C.G.A. § 11-9-310(a)(2019). Furthermore, for a financing statement to be effective, the name of the debtor, among other things, must be provided. O.C.G.A. § 11-9-502(a)(1). With respect to a registered organization like the Debtor, the name of the debtor provided in the financing statement is sufficient only if it is consistent with the name of the debtor indicated on the public record of the debtor's jurisdiction of organization. O.C.G.A. § 11-9-503(a)(1). With a single exception, where a financing statement fails to sufficiently provide the name of the debtor, the financing statement is seriously misleading and as a result is ineffective. O.C.G.A. § 11-9-506(a)-(b). The single exception to this rule applies only in a scenario where "a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic" would disclose such financing statement. O.C.G.A. § 11-9-506(c).

Here, the Defendant filed the Financing Statement on November 14, 2017. The Debtor's name on the Financing Statement is shown as NTC Waste Group, LLC. However, at the time of the filing, the Debtor's correct name as shown on the public record was Wastetech, LLC. Therefore, the Debtor's name on the Financing Statement is insufficient, unless the single exception (or safe harbor) applies. In this case, the single exception does not apply to the Financing Statement because a UCC index search of the Lien records of the GSCCCA using the correct name for the entity "Wastetech" or "Wastetech LLC" would not have disclosed the existence of the Financing Statement.

As noted above, in the Motion the Trustee cited to the Statement of Material Facts, ¶ 12, and paragraph 10 of the Affidavit where she averred that she asked her counsel to conduct a search

8

using the name "Wastetech" or "Wastetech, LLC" as the debtor, which produced no financing statements under those names as debtor on any financing statement filed by the Defendant as the secured party. In reply, the Defendant argued in the Defendant's Brief in Opposition that the Trustee has not met her burden in establishing the absence of dispute regarding the fact that a search using the Debtor's correct name would not have revealed the Financing Statement. However, the Defendant provided no basis or evidence to support this assertion with regard to the Trustee's statement of fact in paragraph 12. In addition, the Defendant provided no evidence to support the opposite contention - that a search of the Lien records of the GSCCCA for the entity "Wastetech" or "Wastetech LLC" would have disclosed the existence of the Financing Statement.

Under Fed.R.Civ.P. 56(c) and (e), once a party moving for summary judgment cites to materials in the record, such as an affidavit, and presents evidence in support of its contention as to the absence of a genuine issue regarding a material fact, the opposing party cannot rely on mere denials or conclusory allegations but must instead present affirmative evidence of facts tending to counter the assertion. *See Johnson v. Fleet Finance, supra*, 4 F. 3d at 949, citing *Anderson v. Liberty Lobby, supra*, 477 U.S. at 257. *See also Lubin v. Murphy (In re Murphy)*, 2017 WL 4620879, *2 (Bankr. N.D. Ga. Oct. 13, 2017).

Because the Trustee's Affidavit only stated that a search using the Debtor's correct name produced no financing statement in that name (as opposed to a financing statement in the name of NTC Waste Group, LLC), however, the Court concluded that the Trustee had not properly supported this operative fact, and further, that the Defendant had not properly addressed the assertion of that fact. Thus, on May 3, 2019, the Court entered an *Order Allowing Opportunity To Properly Support or Address Fact* (Docket No. 37)(the "Order to Supplement") in accordance with

9

Fed.R.Civ.P. 56(e), applicable herein through Fed.R.Bankr.P. 7056.  In the Order to Supplement, the parties were allowed to supplement the record on this issue.

On May 16, 2019, pursuant to the Order to Supplement, the Trustee filed her *Notice of Filing of Affidavit of Preston M. Mueller in Accordance with Court Order* (Docket No. 39)(the "Mueller Affidavit"), and on that same date, the Defendant filed its *Notice of Filing of Affidavit of Alan Poliner In Accordance with Court Order* (Docket No. 40)(the "Poliner Affidavit").   Neither party has controverted the evidence so provided by the other as of the date of this Order.

In the Mueller Affidavit, counsel for the Trustee avers that he recently conducted several UCC index searches through the GSCCCA database using the Debtor's correct name as well as its former name.  The search results are attached thereto as Exhibits "B" through "E."  According to the Mueller Affidavit, statewide "searches using the search terms 'Wastetech' or 'Wastetech LLC' did not lead to finding the Financing Statement."  Mueller Affidavit, ¶ 6.  Only searches using the former name of the Debtor produced the Financing Statement.  Further searches conducted using the standard search logic in the Debtor's name through the GSCCCA database in the Coweta County UCC Index along with a stem search for the Debtor's name also failed to return the Financing Statement, though UCC-1's for another entity were disclosed.  Mueller Affidavit, ¶ 7.  Finally, additional statewide stem searches using the Debtor's name did not disclose the Financing Statement.  Mueller Affidavit, ¶ 8.  Based on these results, the Trustee through counsel states that "a search of the Coweta County UCC Index, and the Georgia Statewide UCC Index, using a debtor name stem search in the GSCCCA database for the Debtor's correct legal name of record did not disclose the Financing Statement."  Mueller Affidavit, ¶ 10.

By comparison, in the Poliner Affidavit counsel avers that a search of the UCC records under "NTC" did produce the Financing Statement, and that a search of "wastetech" in the records

10

of the Georgia Corporations Division led to Wastetech LLC, which was formerly known as NTC Waste Group, LLC.  Results of these searches are attached to the Poliner Affidavit as Exhibit "A." These searches are not, however, relevant to the single exception, which specifically requires that a search of the relevant records under the correct name yield the Financing Statement.  It does not appear, then, that the Defendant conducted a UCC search using the Debtor's correct legal name, but instead relies on a corporate search and further inquiry based on that result – a test that does not address the requirements of O.C.G.A. § 11-9-506(c).

Lacking evidence from the Defendant to contradict the Trustee's search results, the Court acknowledges the Trustee's testimony and evidence presented through counsel regarding the failure of a search to disclose the existence of the Financing Statement using the name Wastetech or Wastetech, LLC as the only relevant evidence on this issue.  Accordingly, the Financing Statement is seriously misleading, and thus is legally ineffective due to the Defendant's failure to sufficiently provide the correct name of the Debtor in compliance with O.C.G.A. § 11-9-506(a)-(b), and further, the safe harbor provision under O.C.G.A. § 11-9-506(c) does not apply.[8]

The Defendant cites *Western Auto Supply Co. v. McKenzie*, 489 S.E.2d 537 (Ga. App. 1997) to support its contention that Georgia courts are reluctant to disturb the senior lienholder's rights: "Western Auto was the first to file a financing statement perfecting its security interest in the collateral of the store...[n]either a name change nor a change in the corporate structure affects this priority." *Western Auto*, *supra*, 489 S.E.2d at 539.  The facts in *Western Auto* are, however, distinguishable.  In that case, the change in the debtor's name occurred *after* the filing of the financing statement.  Here, the name change occurred *before* the filing of the Financing Statement.

---

[8] The Defendant had challenged the Trustee's initial assertion is her Affidavit regarding the search results as being conclusory without any basis in fact.  That challenge is no longer relevant, in light of the Mueller Affidavit, which alone provides a sufficient basis for these findings.

11

The court in *Western Auto* held a *post-filing* change in the debtor's name did not affect the first lienholder's priority in collateral acquired before the change date and up to four months thereafter, a result specifically called for by a statutory section not applicable here. *See* O.C.G.A. § 11-9-507(c)(1). Thus, *Western Auto* is not relevant to this case.

The Defendant also cites *Rebel Auction Co., Inc. v. The Citizens Bank*, 805 S.E.2d 913 (Ga. App. 2017) to support its contention that this Court should not grant summary judgment because there remains an issue of material fact – whether a judicial lien creditor would have been able to find the Financing Statement in the public records. However, *Rebel Auction Company* is also distinguishable. As discussed above, the Trustee has in this case presented evidence through the Mueller Affidavit as to whether a UCC index search for the Debtor's correct name would have revealed the Financing Statement at issue. In *Rebel Auction*, however, neither party presented evidence on that point, and the court thus held that there remained a genuine issue of material fact. *See Rebel Auction*, *supra*, 805 S.E.2d at 919; compare *All Business Corp. v. Choi*, 634 S.E.2d 400, 404-05 (Ga.App. 2006)(recognizing evidence of search result offered by affidavit). Thus, *Rebel Auction* is not relevant to this case.

The result in this case is also supported by the Official Comments to the UCC and by relevant case law. UCC Official Comment to Section 9-506 suggests that "it is the secured party's responsibility to provide the name of the debtor sufficiently in a filed financing statement." U.C.C. § 9-506 cmt. 2 (West 2018).[9] This Comment is well supported by case law. *See e.g. Receivables Purchasing Co. v. R & R Directional Drilling, LLC*, 588 S.E.2d 831, 833 (Ga.App. 2003)(holding

---

[9] Although the official comments to the Uniform Commercial Code are not binding, they are persuasive in matters of interpretation, and many courts give deference to them. *See e.g.*, *In re U.S. Ins. Group, LLC*, 429 B.R. 903, 915 (E.D. Tenn. 2010)("'Tennessee courts generally give "substantial deference" to the Official Comments. "While not binding, [they] are very persuasive in interpreting the statute to which they apply. The comments give some insight into the intent of the overall scheme of the statute as contemplated by the General Assembly in adopting the language of the Statute."'")(internal quotations and citations omitted). *See also In re EDM Corp.*, 431 B.R. 459, 465 (B.A.P. 8th Cir. 2010); *In re Menasche*, 301 B.R. 757, 761 (Bankr. S.D. Fla. 2003).

"a party filing a financing statement . . . acts at his peril if he files the statement under an incorrect name"); *In re John's Bean Farm of Homestead, Inc.*, 378 B.R. 385, 390 (Bankr. S.D. Fla. 2007)(holding "the burden is squarely on the creditor to correctly identify the name of the debtor"). The Official Comment further suggests that absent exception, if the name of the debtor provided on a financing statement is insufficient, "[s]uch a financing statement is ineffective even if the debtor is known in some contexts by the name provided on the financing statement and even if searchers know or have reason to know that the name provided on the financing statement refers to the debtor." U.C.C. § 9-506 cmt. 2. Consistent with this Comment, O.C.G.A. § 11-9-503(c) states that a "financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor." *See also* O.C.G.A. § 11-9-506 (Effect of errors or omissions).[10]

Here, the Defendant contends that it did not knowingly or intentionally list the incorrect entity name of the Debtor on the Financing Statement. The Defendant further contends that it was not aware of the Debtor's intention to change its name, as their relationship began prior to the name change and it knew the Debtor as NTC Waste Group. The Defendant alleges that the Debtor continued to operate its business under its former name after the name change, and that its conduct created the misleading impression that the Defendant could file under NTC Waste Group. None of this is, however, relevant. The requirement is simple, and liability for failing to comply is strict. The secured party must file the UCC-1 in the name of entity as set forth in the public records and, failing that, its filing is not effective. Whether it was confused as a result of (or even misled by) its ongoing relationship with the Debtor is of no moment in this analysis.

---

[10] *See e.g. In re FV Steel and Wire, Co.*, 310 B.R. 390 (Bankr. E.D.Wis. 2004)(applying Illinois UCC, which is similar to Georgia law, court held that a financing statement listing a debtor's trade name instead of its true corporate name, was ineffective even though creditor knew of correct name).

The Defendant also maintains that the caption of the instant bankruptcy action "clearly is indicative of a strong relationship between the Debtor's former and current name, which contradicts [Trustee]'s contentions to the contrary." Defendant's Brief in Opposition, p. 7. Furthermore, the Defendant asserts that "a search of Wastetech in the Georgia business search yields information on NTC Waste Group as well." However, the name change itself is not in dispute here. Neither the Trustee nor the Defendant denies that the Debtor changed its name before the filing of the Financing Statement. Nor does any party deny the debt the Debtor owed to the Defendant. Instead, the issue here is whether the Defendant's security interest in the Debtor's Accounts Receivable was perfected by the filing of the Financing Statement. Pursuant to the statutory requirements for perfecting a security interest, the issue here is adequately reduced to two questions regarding the Debtor's name in the Financing Statement: a) whether the Defendant has sufficiently provided the Debtor's name at the filing of the Financing Statement; and b) whether the Financing Statement would be disclosed by a later search under the Debtor's correct name. Pursuant to the applicable law, the Financing Statement remains ineffective even if searchers such as the Trustee, the Defendant, or any other third party knew or had reason to know that NTC Waste Group refers to the Debtor.

Finally, the Defendant contends its security interest was nevertheless perfected because the filing date of the Financing Statement falls within four (4) months after the name change, citing to O.C.G.A. § 11-9-507(c)(1). This contention has no merit. Under Section 11-9-507(c)(1), if the name that a filed financing statement provides for a debtor becomes insufficient because the debtor changes its name, so that the financing statement becomes seriously misleading, the financing statement is nevertheless effective to perfect a security interest in collateral acquired by the debtor before, or within four months after, the date that the filed financing statement becomes seriously misleading. O.C.G.A. § 11-9-507(c)(1).

14

An examination of the language of the statute reveals that Section 11-9-507(c)(1) applies only to the situation where a debtor changes its name *after* a valid financing statement is filed,[11] rendering an otherwise properly recorded financing statement seriously misleading. Here, however, the Debtor's name change happened *before* the filing of the Financing Statement, rendering the Financing Statement ineffective *ab initio*. Therefore, Section 11-9-507(c)(1) does not apply in this case.[12]

Accordingly, the perfection of the security interest of the Defendant in Accounts Receivable of the Debtor is ineffective under Georgia law because (i) the Debtor's name listed on the Financing Statement (NTC Waste Group, LLC) is inconsistent with its name on the public record (Wastetech, LLC) due to a name change prior to the filing of the Financing Statement, and (ii) a search of the Georgia Superior Court Clerks' Cooperative Authority's Lien records for the entity "Wastetech" or "Wastetech LLC" would not have disclosed the existence of the Financing Statement.

*Inadequate Collateral Description*

Having answered the first question regarding the effectiveness of the Financing Statement, this Court now turns to the second question — whether the perfection is also ineffective under Georgia law because the description of the collateral in the Financing Statement is inadequate.

---

[11] Section 11-9-507(c) deals with a "filed financing statement" where the name "becomes insufficient", which suggests that the financing statement was at some point filed with a sufficient name. Here, the name on the Financing Statement was never sufficient under Section 11-9-503.

[12] Section 507(c)(1) is intended to solve a different problem. The UCC recording system is based on the ability to search the name of the debtor and find a record of the interests it has granted in its property. That system is challenged by the fact that entities change their names for a variety of reasons. The UCC could make a UCC-1 ineffective immediately upon a name change, but that would require secured creditors to monitor the record names of all of their borrowers every day, and would subject them to potentially intentional mischief by dishonest borrowers. Conversely, the UCC could provide that a post-filing name change has no effect on a UCC-1 that was correct when filed, but that would impair the usefulness of the UCC filing system in providing notice of interests. The four-month period strikes a balance between these concerns, as it allows secured creditors time to learn of name changes and make adjustments to their filings while substantially preserving the UCC records as an accurate source of information on the interests of creditors in the property of debtors.

Under Georgia law, another element of the sufficiency of a financing statement is that it must adequately describe the collateral covered by the financing statement. O.C.G.A. § 11-9-502(a)(3). A financing statement sufficiently indicates the collateral that it covers only if the financing statement provides either a description of the collateral pursuant to O.C.G.A. § 11-9-108 or an indication that the financing statement covers all assets or all personal property. O.C.G.A. § 11-9-504. Section 11-9-108 provides that a description of collateral "is sufficient, whether or not it is specific, if it reasonably identifies what is described." O.C.G.A. § 11-9-108(a). Examples of reasonable description include specific listing, category, and any other method that makes the identity of the collateral is objectively determinable. O.C.G.A. § 11-9-108(b).

For the purpose of a reasonable identification, the description merely needs to raise a red flag to a third party indicating that more investigation may be necessary to determine whether or not an item is subject to a security agreement. *See In re Pickle Logging, Inc.*, 286 B.R. 181, 184 (Bankr. M.D. Ga. 2002)(holding that an error in the description of a piece of equipment in which creditor claimed security interest that was identified, in both security agreement and financing statement, by the wrong serial and model numbers, would not have raised a red flag for a person of ordinary business prudence). A party does not lose its secured status just because the description includes inaccurate information. *See id.*, citing *Yancey Bros. Co. v. Dehco, Inc.*, 134 S.E.2d 828, 830 (Ga.App. 1964). However, there must be information that provides a "key" to the collateral's identity other than the inaccurate information. *Id*.

Here, the description of the collateral contained in the Financing Statement is insufficient because it does not indicate that the collateral covers all assets or all personal property of the Debtor, nor does it meet the requirements under O.C.G.A. § 11-9-108 for a reasonable identification. Instead, the Financing Statement describes the collateral as "[c]ertain future receivables sold by

16

said business seller and purchased by Crown Funding Group, Inc., as buyer, pursuant to that certain purchase and sale of future receivables agreement between seller and purchaser dated 8/7/2017 (the 'agreement')."

Had the description been "all future receivables of the Debtor," it would have met the requirements under Section 11-9-108 by describing the collateral through category. It does not so provide, but instead endeavors to identify a more limited set of receivables. More specifically, the description points to "certain future receivables," which is more specific than a general category. Accordingly, a reasonable identification of the collateral calls for the identification of the receivables purchase agreement that defined the relevant accounts receivable. To identify that agreement, certain information may be relevant, including the date the agreement was entered into and the parties to that agreement.

Regarding the agreement date, according to the description in the Financing Statement, the agreement was dated August 7, 2017. However, none of the six Receivables Agreements on which the Defendant relies is dated on August 7, 2017. Consequently, that information in the Financing Statement would not help to identify the particular receivables in which the Financing Statement was intended to perfect an interest.

The description of the collateral did not reveal any specific information about the "seller" of the receivables, but in referring to a debtor and to a seller of receivables it is reasonable to presume that the debtor is the seller here because that is one way a debtor can finance receivables. More critically, however, adequate information to identify the other party to the receivables purchasing agreement described in the Financing Statement is lacking. The counterparty to the receivables purchase agreement that should be consulted to describe the relevant receivables is identified in the Financing Statement as "Crown Funding Group, Inc.," which is not the name of

17

the Defendant or the name on any of the Receivables Agreement**s**.  *See* Exhibit "A," attached to Notice of Filing of Plaintiff's First Request for Admissions to Defendant, Docket No. 28.  Even if Crown Funding Group, Inc. could eventually be found and the discovery made that it shares an address with the Defendant as the purported secured party, which the Defendant insists is possible through a search of the records of the New York State Department of State Division of Corporations, those facts would not necessarily lead a third party to an agreement that was actually in the name of the Defendant and not Crown Funding Group, Inc., which is not the Defendant and apparently exists as a separate entity.

Given this collective ambiguity, the information in the Financing Statement fails to provide a "key" to the relevant agreement and thus the collateral's identity.  Accordingly, this Court holds that the perfection of the security interest of the Defendant in Accounts Receivable of the Debtor is ineffective under Georgia law because the Financing Statement fails to provide a description of the collateral that reasonably identifies the collateral, i.e., the Debtor's Accounts Receivable subject to the Defendant's security interest.

## **CONCLUSION**

The perfection of the Defendant's security interest in Debtor's Accounts Receivable granted under the Receivables Agreements is not properly perfected because neither of two elements required for perfection by Georgia law is met.  First, the Debtor's name as listed in the Financing Statement is inconsistent with its legal name on the public record.  Moreover, a search of the Georgia Superior Court Clerks' Cooperative Authority's Lien records for the Debtor's correct name would not have disclosed the existence of the Financing Statement.  Second, the Financing Statement does not indicate that it covers all assets or all personal property of the Debtor, and it fails to provide a description of, or reasonably identify, the Debtor's Accounts Receivable that are

subject to the Defendant's security interest.  Accordingly, the Financing Statement is seriously misleading, and perfection of the Defendant's security interest in Debtor's Accounts Receivable is legally ineffective.  Based on the foregoing, it is

**ORDERED** that the Trustee's Motion for Summary Judgment be, and the same hereby is, **GRANTED**; and, it is further

**ORDERED** that any security interest asserted by the Defendant against property of the Estate under the Receivables Agreements is subordinate to the interest of the Trustee under 11 U.S.C. § 544; and, it is further

**ORDERED** that the Transfers by the Debtor to Defendant of a security interest in Debtor's Accounts Receivable are **avoided** pursuant to 11 U.S.C. § 544; and, it is further

**ORDERED** that the Trustee **recover** the avoided Transfers pursuant to 11 U.S.C. § 550, which are **preserved** for the benefit of the Estate under 11 U.S.C. § 551.

Judgment will be entered accordingly.

The Clerk's office is directed to serve a copy of this Order upon counsel for the Debtor, counsel for the Chapter 7 Trustee, counsel for the Defendant, and the Office of the United States Trustee.

**[END OF DOCUMENT]**